IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BUZZ SEATING, INC., | : | |
| *Plaintiff,* | : | Case No. 1:24-cv-00555-JPH |
| vs. | : | Judge Jeffery P. Hopkins |
| DCI, INC., | : | |
| *Defendant.* | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff Buzz Seating, Inc.'s (hereinafter, "Buzz Seating" or "Plaintiff") Motion for Default Judgment (the "Motion"). Doc. 11. For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART, DENIED IN PART**.

## I.    BACKGROUND

Since October 8, 2012, Buzz Seating has engaged in various business transactions with DCI, Inc. (hereinafter, "DCI" or "Defendant"). Compl., Doc. 1, ¶ 12. The parties entered into numerous contracts whereby Buzz Seating provided DCI with office furniture, chairs, and a sundry of other products predicated on purchase orders generated by DCI. *Id.* ¶¶ 12, 13. Since the working relationship between the two companies began, DCI purchased products from Buzz Seating in amounts totaling more than $1,900,000.00. *Id.* ¶ 16.

Under the terms and conditions of each purchase order, DCI was required to pay the outstanding invoices Buzz Seating submitted on all products produced within 30 days of purchase. *Id.* ¶ 17. For over ten years, Buzz Seating filled multiple purchase orders for products it produced, and DCI timely paid all outstanding invoices on those orders without incident. *Id.* ¶ 19. Buzz Seating alleges, however, that beginning in March 2023, DCI began

to place product orders, accept and retain shipments, but fail to pay invoices within the contracted 30-day window. *Id.* ¶¶ 20–21. Currently, DCI owes Buzz Seating on eight overdue and outstanding invoices for products delivered in the total amount of $230,927.21. *Id.* ¶ 21.

On October 3, 2024, Buzz Seating sued DCI, asserting claims for breach of contract, an accounting, unjust enrichment, and promissory estoppel. *See generally* Doc. 1. To date, Defendant has failed to appear or otherwise defend against this action.[1] An entry of default was entered in this case on February 12, 2025. *See* Doc. 10.

## II.    LAW & ANALYSIS

There is a two-step sequential process for obtaining default judgment. *See Allied Consol. Enters. v. Aladwan*, No. 2:20-cv-4561, 2021 WL 1572291, *2 (S.D. Ohio April 22, 2021). First, a party must apply for an entry of default from the clerk. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Then, after a party obtains an entry of default, that party may request that default judgment be entered. Fed. R. Civ. P. 55(b). This can happen two ways: by the clerk or by the court.

If the party's claim is for a sum certain or a sum that may be ascertained by computation, the clerk may enter default judgment. Fed. R. Civ. P. 55(b). In any other case, the party must seek default judgment from the court. *Id.* When considering an application for default judgment, the court will accept the complaint's factual allegations as true but must assess whether the factual allegations are legally sufficient to state the alleged cause of action. The moving party may prove the existence of damages through detailed affidavits or

---

[1] A summons issued to the Defendant was returned executed on December 26, 2025. *See* Doc. 7.

documentary evidence, or at an evidentiary hearing. *Arthur v. Robert James Assocs. Asset Mgmt.*, No. 3:11-cv-460, 2012 WL 1122892, at *3 (S.D. Ohio Apr. 3, 2012).

For default judgment to be entered by a district court, the court must be satisfied that it possesses both subject matter and personal jurisdiction over the nonresponsive party. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case."); *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment."); *Kuhlman v. McDonnell*, No. 1:20-cv-510, 2022 WL 407240, at *2 (S.D. Ohio Feb. 10, 2022). If the jurisdictional prerequisite is met, then the court must weigh the factors articulated by the Sixth Circuit in *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002). Those factors are:

> (1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits.

*See also Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

### A. Plaintiff is entitled to default judgment.

As a threshold matter, Plaintiff's Complaint properly invokes this Court's jurisdiction. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Defendant and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Compl., Doc. 1, ¶ 8. Furthermore, personal jurisdiction is proper here because DCI engaged in business with Buzz Seating, a citizen of the state of Ohio, and has sufficient business contacts in Ohio. *Id.* ¶ 9. DCI negotiated various contracts with Buzz Seating in Ohio, and Buzz Seating supplied

products to DCI for over a decade in amounts totaling nearly two million dollars. *Id*. DCI has also allegedly failed to remit payment for numerous outstanding invoices to Buzz Seating, thereby causing harm to Buzz Seating in Ohio. *Id*. Finally, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)–(c) because a substantial part of the events and omissions giving rise to Buzz Seating's claims herein occurred in this District. *Id*. ¶ 11.

Having established that this Court has both subject matter jurisdiction and personal jurisdiction over the parties, the Court will now weigh the factors set forth in *Russell*—starting first with the second and third *Russell* factors regarding whether Plaintiff has asserted sufficient and meritorious claims—and saving for later discussion the possible prejudice to Plaintiff.

### 1. *Sufficient and Meritorious Claims*

The second and third factors in *Russell* relate to the merits of Plaintiff's claims and the sufficiency of Plaintiff's Complaint. Like other courts, this Court will consider these factors together. Plaintiff alleges four claims in the Complaint: (1) breach of contract; (2) unjust enrichment; (3) promissory estoppel; and (4) action on account. *See* Doc. 1. Plaintiff seeks compensatory damages in excess of $230,927.21—DCI's outstanding account balance—as well as prejudgment interest, post-judgment interest, attorney's fees and expenses, and costs. *Id*. at PageID 8. Taking the factual allegations as true, this Court finds that Plaintiff's Complaint states sufficient and meritorious claims against Defendant. However, as explained below, certain of Plaintiff's claims—those for unjust enrichment and promissory estoppel—would fail as a matter of law.

### i. Breach of Contract and "On Account" Claims

Plaintiff alleges a claim for breach of contract and "on account" for Defendant's failure to pay for the products. Doc. 1, ¶ 33–36. An action "on account" claim "simplifies pleadings

by allowing a party to advance, as one claim, claims for separate breaches of contract based on a series of transactions." *Kwikcolor Sand v. Fairmount Minerals Ltd.*, 2011-Ohio-6646, ¶ 13 (8th Dist.) (citation omitted). The Court proceeds to review these claims together. *See Oberer v. Specialty Med. Care LLC*, 2023-Ohio-2610, ¶ 15 (2d Dist.). Under Ohio law,[2] a party has stated a breach of contract claim where there is: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff because of the breach. *Mitchell v. Fujitec Am., Inc.*, No. 1:20-CV-363, 2022 WL 836424, *8 (S.D. Ohio Mar. 21, 2022) (quoting *Johnson v. Delphi Corp.*, 261 F. Supp. 2d 955, 961 (S.D. Ohio 2003)).

It is well established that there are three categories of contracts under Ohio law: express, implied-in-fact, and implied-in-law. *Legros v. Tarr*, 44 Ohio St.3d 1, 6 (1989). Express and implied-in-fact contracts differ from contracts implied-in-law in that contracts implied-in-law are not true contracts. *Sabin v. Graves*, 86 Ohio App.3d 628, 633 (6th Dist. 1993). The existence of express or implied-in-fact contracts hinges upon proof of all of the elements of a

---

[2] "Before considering the substance of the claims, the Court must first determine the applicable law*." Cabatech, LLC v. Nextlight, LLC*, No. 1:22-CV-59, 2024 WL 3740593, at *2 (S.D. Ohio Aug. 8, 2024). In a diversity action such as the instant case, a district court must apply the choice of law rules of the state in which it sits. *Nat'l Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir. 1992). Plaintiff did not attach an agreement or written contract between the parties, nor did Plaintiff indicate whether the agreement or written contract had a choice of law provision. *See generally* Doc. 4; Doc. 11. "Ohio choice of law rules mandate that the law of the state with the more significant relationship to the contract should govern disputes arising from it." *N. River Ins. Co. v. Emps. Reinsurance Corp.*, 197 F. Supp. 2d 972, 979 (S.D. Ohio 2002). In determining the "more significant relationship," Ohio has adopted the test set forth in the Restatement (Second) of Conflict of Laws § 188, which includes consideration of: (1) the place of contracting; (2) the place of negotiating the contract; (3) the place of performance; (4) the location of the contract subject matter; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *N. River Ins. Co.*, 197 F. Supp. 2d at 979 (citing *National Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir. 1992)).

These factors weigh in favor of applying Ohio law here. The Complaint does not identify how or where the parties negotiated and signed a written agreement. *See* Doc. 4. Defendant is a New Hampshire corporation, and Plaintiff is an Ohio corporation. *Id.* ¶¶ 2, 3. It is not clear where the products were shipped to, but DCI "remitted payments for its purchase of products to Buzz Seating via payments (e.g., checks) sent to and delivered in Ohio. *Id.* ¶ 9. As multiple states may be appropriate, this Court will apply Ohio law. *See Dodge Data & Analytics LLC v. iSqFt*, 183 F. Supp. 3d 855, 872 (S.D. Ohio 2016) ("If [] either state would be appropriate, the court should apply the law of the forum state.").

contract. *Lucas v. Costantini*, 13 Ohio App.3d 367, 368 (12th Dist. 1983). Express contracts diverge from implied-in-fact contracts in the form of proof that is needed to establish each contractual element. *Penwell v. Amherst Hosp.*, 84 Ohio App.3d 16, 21 (9th Dist. 1992). In express contracts, assent to the terms of the contract is actually expressed in the form of an offer and an acceptance. *Lucas* at 368. On the other hand, an "implied contract is a contract inferred by a court from the circumstances surrounding the transaction, making a reasonable or necessary assumption that a contract exists between the parties by tacit understanding." *Hollis Towing v. Greene*, 2003-Ohio-5962, ¶ 8.

The "[e]ssential elements of a contract include an offer, acceptance, consideration, [and] a manifestation of mutual assent. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16 (cleaned up). Here, Plaintiff alleges that that the "terms and conditions governing orders of product from Buzz Seating along with numerous purchase orders . . . between the parties constitute valid and binding [c]ontracts." Compl., Doc. 1, ¶ 32. In support of its claim, Plaintiff makes certain statements of facts in the Complaint but only attaches Defendant's account statement as Exhibit A—liberally referring to it as a "contract." *Id*. Not so. All Exhibit A expresses is a document on Buzz Seating letterhead purporting to show Defendant's outstanding account statement balance as of August 31, 2024. *See* Doc. 1-1, PageID 10–11. There are no terms in the account statement, nor is there any offer or acceptance. Exhibit A is simply an accounting of the amounts allegedly owed by Defendant to Plaintiff. *Id*. The Court is therefore hard-pressed to conclude that Plaintiff has adequately alleged a breach of an *express* contract because the account statement upon which Plaintiff relies for its breach-of-

contract claim has no explicit indication that there was "an offer, acceptance, consideration, [and] a manifestation of mutual assent." *Kostelnik* at ¶ 16.

Nonetheless, the Court finds that Plaintiff has sufficiently and meritoriously alleged a breach of an *implied* contract between the parties. "To establish a contract implied-in-fact, a plaintiff must demonstrate that the circumstances surrounding the parties' transaction make it reasonably certain that an agreement was intended." *Stepp v. Freeman*, 119 Ohio App.3d 68, 74 (2d Dist. 1997). One of the "most obvious example[s]" of an implied contract occurs where "recovery is sought for services rendered or materials furnished[,] and the circumstances are such that people expect to be paid and pay for such conduct." *Lucas* at 369. Here, Plaintiff alleges that over the course of the ten-year working relationship between the parties, DCI "purchased products from Buzz Seating for over $1,900,000, including the unpaid invoices" currently in dispute. Doc. 1, ¶ 16. Plaintiff claims that it "fulfilled multiple purchase orders from DCI for products and [that] DCI paid its outstanding invoices for such orders without issue." *Id.* ¶ 19. Only in March 2023 did DCI begin to "accept delivery of the products" but "fail[] to pay for such products." *Id.* ¶ 20. Exhibit A supports this assertion by indicating, beginning in March 2023, the "overdue and outstanding invoices for products ordered from Buzz Seating and delivered by Buzz Seating [to DCI] in the total amount of $230,927.21." *Id.* ¶ 21.

By failing to appear or otherwise defend this action, Defendant "has not denied that the invoices were not paid[,] nor has it disputed the amounts billed." *Gen. Produce LLC v. Farm Fresh Fruits & Vegetables, LLC*, No. 1:18-cv-00246, 2019 WL 2537655, at *5 (E.D. Tenn. Apr. 30, 2019). Even if Defendant was to argue that the account statement does not reflect a contract between the parties, the existence of an enforceable contract here may still be proven

"in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of a contract." *Hocking Valley Community Hosp. v. Community Health Plan of Ohio*, 2003-Ohio-4243, ¶ 15 (4th Dist.). Defendant's previous timely payments of at least $1.6 million for Plaintiff's delivered goods is conduct indicating that Defendant sought products from Plaintiff and expected to pay for such products. This past performance demonstrates "circumstances surrounding the parties' transaction [that] make it reasonably certain that an agreement was intended." *Freeman* at 74.

The Court finds that Plaintiff has therefore stated sufficient and meritorious claims for breach of contract and "on account" for Defendant's failure to pay for the products currently in dispute.

ii.  Unjust Enrichment

Plaintiff also pursues an unjust enrichment claim, appearing to plead this count in the alternative to the first breach of contract claim in the event that there was no enforceable contract established between the parties. Doc. 1, ¶ 37–46. Unjust enrichment is an equitable claim based on a contract implied-in-law, *see Hummel v. Hummel*, 133 Ohio St. 520, 525–28 (1938), the purpose of which "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954). Importantly, "[u]njust enrichment is an alternative theory of recovery, which '*operates in the absence* of an express contract or a *contract implied in fact* to prevent a party from retaining money or benefits that in justice and equity belong to another.'" *Cantlin v. Smythe Cramer Co.*, 2018-Ohio-4607, ¶ 4 (8th Dist.) (quoting *Gallo v. Westfield Natl. Ins. Co.*, 2009-Ohio-1094, ¶ 19 (8th Dist.)) (emphasis added).

Because Plaintiff has adequately alleged the existence of a contract implied-in-fact, it cannot simultaneously succeed on an unjust enrichment claim based on the exact same set of facts and circumstances. *See Ryan v. Rival Mfg. Co.*, 1st Dist. Hamilton No. C-810032, 1981 WL 10160, *1 (Dec. 16, 1981) ("It is clearly the law in Ohio that an equitable action in quasi-contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact."). Having established that Plaintiff has set forth a sufficient and meritorious claim for breach of contract implied-in-fact, this Court declines to enter default judgment on Plaintiff's unjust enrichment claim because these claims are now impermissibility duplicative.

### iii.    Promissory Estoppel

Plaintiff also pursues a claim for promissory estoppel. Doc. 1, ¶¶ 47–56. "The equitable doctrine of promissory estoppel is an alternative theory of recovery for a breach of contract claim." *Waltherr-Willard v. Mariemont City Sch.*, No. 1:12-cv-476, 2013 WL 121970, at *3 (S.D. Ohio Jan. 9, 2013), *aff'd*, 601 F. App'x 385 (6th Cir. 2015). "In other words, promissory estoppel is not available as a remedy where the legal relationship between the parties is governed by a valid and enforceable contract," as is the case here. *Id.*

"Because . . . there was an implied contract here," this Court declines to enter default judgment on Plaintiff's "alternative theory of promissory estoppel." *Truax v. Arora*, No. 2758, 1993 WL 99893, at *3 (Ohio Ct. App. Apr. 7, 1993); *see also Harwood v. Avaya Corp.*, No. C2-05-828, 2007 WL 1574116, at *10 (S.D. Ohio May 25, 2007) ("[T]he doctrine of unjust enrichment does not apply where a valid, enforceable contract exists.").

2. *Prejudice to the Plaintiff*

Having found that Plaintiff has stated sufficient and meritorious claims, the Court must next determine whether Plaintiff would suffer prejudice if the Motion was denied. Plaintiff initiated this lawsuit in October 2024, and the alleged breaches specified in the Complaint began to occur in March 2023. Taking the allegations as true, Defendant has been in breach of the contract between the parties for more than two years. Defendant has made no effort to appear or defend this lawsuit. To deny Plaintiff's Motion would "render Plaintiff's effort at a civil resolution futile, while rewarding Defendant's avoidance of this litigation." *Evans Adhesive Corp. v. Golden State Adhesives, Inc.*, No. 2:23-cv-1801, 2023 WL 7130676, at *3 (S.D. Ohio Oct. 30, 2023). For these reasons, the Court finds that this factor weighs in favor of default judgment.

3. *Amount of Money at Stake*

Next, the Court considers the amount of money at stake. Plaintiff claims "damages in excess of $230,927.21," as well as "prejudgment interest, post-judgement interest, attorney's fees and expenses, [and] costs." Doc. 1, PageID 8. This is an award appropriate to place Plaintiff "in as good a position as [it] would have been but for the breach." *Walters v. Goddard*, 127 N.E.3d 322, 326 (Ohio Ct. App. 2018). Additionally, Plaintiff's total award is likely to be on the lower end of the range of awards in federal cases. *See e.g.*, *Iron Workers Dist. Council of S. Ohio & Vicinity Ben. Tr. v. Hoosier Steel, Inc.*, No. 3:11-cv-458, 2012 WL 1122809, at *4 (S.D. Ohio Apr. 3, 2012) (awarding over $300,000); *see also Bd. of Trs. of the Ohio Laborers Bens. v. Olive Leaf Landscaping, Inc.*, No. 2:22-CV-2799, 2023 WL 8031493, at *3 (S.D. Ohio Nov. 20, 2023) (collecting cases). This factor therefore weighs in favor of default judgment.

### 4. *Possible Disputed Material Facts*

As for the next factor, Defendant has not placed *any* material facts in dispute because it has failed to appear or otherwise defend against this action. *See* Doc. 7. Additionally, because Defendant has failed to respond to Plaintiff's Complaint and Motion, Defendant has forfeited the right to dispute the allegations set forth therein. *See Evans Adhesive Corp.*, 2023 WL 7130676, at *3. Thus, this factor weighs in favor of default judgment.

### 5. *Excusable Neglect*

Like the previous factor, this Court is unable to attribute Defendant's default to excusable neglect because Defendant has failed to appear or otherwise defend in this action despite proper service of process. *See* Doc. 7. This fact is indicative of actual disregard rather than excusable neglect. *United States v. Intelligent Perimeter Sys.*, No. 2:21-cv-1913, 2022 WL 3348653, at *4 (S.D. Ohio Aug. 12, 2022). This factor therefore favors default judgment.

### 6. *Preference for Decision on the Merits*

As a final consideration, the Court must account for "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1472. By its nature, default judgment conflicts with merits-based decisions. But in cases such as this, where Defendant has shown no interest in pursuing a decision on the merits, it is appropriate to consider the need for judicial efficiency and the needs of the litigants that have actually appeared before the Court. There are no mitigating factors that Defendant has articulated in this case that weigh against default judgment. Thus, the Court is compelled to resolve this case through default judgment. Accordingly, default judgment shall be issued against Defendant.

### III.     DAMAGES AND ATTORNEY'S FEES AND COSTS

Having found Plaintiff entitled to default judgment, this Court now considers Plaintiff's request for damages. Compl., Doc. 1, PageID 8. "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Vesligaj v. Peterson*, 331 F. App'x. 351, 355 (6th Cir. 2009) (quotations omitted). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id*. (quotations omitted). While "the court may conduct an evidentiary hearing to determine damages, an evidentiary hearing is not a prerequisite to the entry of default judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained on the record before the court." *Joe Hand Promotions, Inc. v. RPM Mgmt. Co. LLC*, No. 2:11-cv-377, 2011 WL 5389425, at *1 (S.D. Ohio Nov. 7, 2011) (citation omitted). Based on the evidence presented in support of Plaintiff's Motion for Default Judgment, including the at-issue invoices and outstanding account statement (Doc. 1-1), the affidavit of president and owner of Buzz Seating Daniel O'Hara (Doc. 11-1), and the declaration of counsel Theresa L. Nelson (Doc. 11-2), the Court finds a hearing on damages to be unnecessary at this juncture.

Plaintiff requests an award of damages in the amount of $230,927.21, an award of "interest at a rate of 1.5% per month as provided in the Contracts, as well as attorney['s] fees in the amount of $4,050.00 and costs in the amount of $405.00." Doc. 11, PageID 40. The Court will address each request in turn.

#### A. Monetary Damages

Plaintiff seeks compensatory "damages in the amount of at least $230,927.21 for DCI's outstanding account balance." Compl., Doc. 1, ¶ 60. The Court will review this request for

damages solely in the context of Plaintiff's breach of contract and "on account" claims (Counts One and Four), to which Plaintiff is entitled to default judgment. As stated above, "[t]he damages awarded for a breach of contract [under Ohio law] should place the injured party in as good a position as he would have been but for the breach." *Walters v. Goddard*, 127 N.E.3d 322, 326 (Ohio Ct. App. 2018) (citation omitted).

Plaintiff has properly established that $230,927.21 is warranted because of DCI's breaches. *See* Doc. 1-1; Doc. 11-1; Doc. 11-2. As of August 31, 2024, Defendant has an outstanding balance of $230,927.21 owed to Plaintiff, as demonstrated by the invoices sent to and ignored by Defendant, Defendant's statement balance, as well as an affidavit by Plaintiff's president attesting to the same. Doc. 1-1; Doc. 11-1; Doc. 11-2. Thus, an award of $230,927.21 in monetary damages is appropriate to place Plaintiff "in as good a position as [it] would have been but for the breach." *Walters*, 127 N.E.3d at 326.

**B. Interest**

Plaintiff also seeks prejudgment and postjudgment interest on its request for damages. Doc. 11, PageID 39. In diversity cases such as here, "federal law controls postjudgment interest but state law governs awards of prejudgment interest." *Est. of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quotation omitted). The Court will proceed to address each request for interest on damages in turn.

1. *Prejudgment Interest*

"Ohio law provides for prejudgment interest to the party that obtains a judgment on a contract claim or counterclaim." *Cabatech, LLC v. Nextlight, LLC*, No. 1:22-cv-59, 2024 WL 3740593, at *4 (S.D. Ohio Aug. 8, 2024) (citing Ohio Rev. Code § 1343.03(A)); *see also Landis v. Grange Mut. Ins. Co.*, 82 Ohio St.3d 339, 341 (1998). "The award of prejudgment interest is

intended to compensate the plaintiff for the period of time between accrual of the claim and judgment." *Persello v. Allstate Ins. Co.*, 2011-Ohio-3230, ¶ 15. Under § 1343.03(A), "when money becomes due and payable . . . upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of . . . a contract or other transaction, . . . the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code," unless some other contractual rate applies. Ohio Rev. Code § 1343.03(A).

Here, because Plaintiff "has been granted judgment on an underlying contract claim for money that is due and payable, [Plaintiff] is entitled to prejudgment interest as a matter of law." *Kott Enterprises, LTD. v. Brady*, 2004-Ohio-7160, ¶ 73. Although not attaching any agreement or written contract, Plaintiff indicated that an interest rate of 1.5% per month is "provided [for] in the [c]ontracts" between the parties. Doc. 11, PageID 39. Plaintiff shall file a proposed judgment entry in which it calculates the amount of prejudgment interest that has accrued from each breach to the date of this Order.[3]

### 2. *Postjudgment Interest*

Plaintiff is also entitled to postjudgment interest at the applicable statutory rate from the date of this Order until the entire judgment is satisfied. As is relevant here, "28 U.S.C. § 1961(a) requires postjudgment interest to be paid on money awarded by district courts in civil actions." *CAPSA Sols., LLC v. Concord Healthcare Grp.*, LLC, No. 2:18-cv-594, 2019 WL 4894038, at *3 (S.D. Ohio Oct. 4, 2019) (citations omitted). "The district court has no discretion to deny postjudgment interest, as it is mandatory." *Id.* (citing *Caffey v. UNUM Life*

---

[3] This filing should also include as an attachment the written agreement or contract between the parties purporting to reflect the agreed-upon 1.5% interest rate provision. *See* Doc. 11, PageID 39. If Plaintiff cannot produce a document containing the 1.5% interest rate provision, "the standard rate set out in Ohio Revised Code § 5703.47" would apply. *See Cabatech, LLC*, 2024 WL 3740593, at *4.

*Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002)). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *See* 28 U.S.C. § 1961(a).

### C. Attorney's Fees and Costs

Lastly, Plaintiff seeks attorney's fees and costs totaling $4,455.00. Doc. 11, PageID 39. However, "[i]t has long been the general rule in the United States that a prevailing party may not ordinarily recover attorney's fees in the absence of a statute or enforceable contract providing for a fee award." *Williams v. ABX Air, Inc.*, No. 1:06-cv-833, 2007 WL 2886283, at *7, (S.D. Ohio Sept. 27, 2007) (citing *Shimman v. Int'l Union of Operating Eng'rs, Loc. 18*, 744 F.2d 1226, 1229 (6th Cir. 1984)). Because Plaintiff did not provide a copy of a written contract between the parties or direct the Court to a statute providing for a fee award, Plaintiff is not entitled to attorney's fees and costs.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Default Judgment (Doc. 11) is **GRANTED IN PART, DENIED IN PART**. Plaintiff's requests for (1) default judgment on its breach of contract and "on accounts" claims (Counts One and Four), (2) monetary damages, and (3) pre- and postjudgment interest are **GRANTED**. Plaintiff's requests for (1) default judgment on its unjust enrichment and promissory estoppel claims (Counts Two and Three); (2) attorney's fees, and (3) costs are **DENIED**.

As such, default judgment is **ENTERED** in favor of Plaintiff on its breach of contract and "on account" claims. Plaintiff is hereby **AWARDED** against Defendant $230,927.21 in damages, plus postjudgment interest at the applicable statutory rate commencing on the date

of this Order. Plaintiff **SHALL FILE** a proposed judgment entry reflecting the amount of prejudgment interest that has accrued from the date of Defendant's breaches to the date this Order is entered.

      **IT IS SO ORDERED.**

April 24, 2025

Jeffery P. Hopkins
United States District Judge